LESLIE MacDONALD, PETITIONER-PROSECUTRIX, v. THE RIVERSIDE AND FORT LEE FERRY COMPANY, RESPONDENT-DEFENDANT.

Submitted May 4, 1943—Decided June 28, 1943.

Before Justices CASE, DONGES and PORTER.

For the petitioner-prosecutrix, *Charles Hershenstein, Edward A. Markley, Patrick F. McDevitt* and *Collins & Corbin.*

For the respondent-defendant, *Henry H. Fryling* and *Henry J. Sorenson.*

The opinion of the court was delivered by

CASE, J.   This is on a dependent's claim under the Employer's Liability Act, for the death of John Muir. The Bureau found that the death was due to an accident arising out of and in the course of the employment caused primarily by a blow from a revolving mooring wheel, resulting in a fall and ultimately in a brain hemorrhage, and allowed an award. On appeal the Bergen County Court of Common Pleas concluded that the weight of the evidence was *contra* the findings in the Bureau and reversed. The controversy is on the facts. It is conceded that there was a trauma; but it is contended by the employer, and it was the finding in the Pleas, that the trauma consisted of a blow on the head caused by the decedent's fall and that the fall was caused by a cerebral hemorrhage entirely disconnected from the

employment. There is medical support for both views. In our opinion the solution must be found in an appraisal of the incidents immediately surrounding the occurrence of the injury.

Muir was, and had been for years, employed by the Riverside and Fort Lee Ferry Company as a deck hand on its ferry boats. It was a part of his duty, as the ferry boat on which he worked came into or was about to leave its mooring, to fasten or to unfasten, as the case might be, one of the two hawsers which served to hold the boat firmly to the dock. The arrangement was of familiar design. On either side of the boat near the landing platform was a ring. A sizable hook at the end of a hawser was swung into the ring and the rope then tightened by a revolving drum on the bridge until the boat was snugly in place. The drum was operated by a wheel and was held, once the line was taut, by a ratchetted ring which encircled the hub of the wheel and was fitted with a pawl, called by one witness a "hook," by another a "dog." The pawl moved at one end upon a pin set into the structural portion of the apparatus and at the other end played upon and sank between the teeth of the ratchet and prevented a reverse spin. When the pawl was released from the ratchet, the wheel was given a backward spin commensurate with the pull upon the rope. It was the practice of the deck hands, so the proofs show, when a boat was being warped into place, to tighten the winch to the furthest point it would go; this in order to hold the boat securely, close to the bridge.

On August 29th, 1939, at about 9:30 A. M., the ferry boat was loaded and was ready to leave its slip at the ferry landing, Edgewater, New Jersey. Muir went about his duty of detaching the rope on his side of the boat. He called to his assistance one Appulise, a bootblack on the boat, who had frequently given that sort of help. Appulise went to the wheel and by grasping it and stepping on one of the spokes forced it slightly forward. The effect of this movement was to release the pawl from the grip of the ratchet so that Muir could lift the pawl and thus take the brake off the drum; and, of course, when Appulise forced the wheel forward, he

increased the strain upon the rope, and the potential rebound when the wheel was released, by just so much. Muir removed the pawl, Appulise let go the wheel, the wheel spun and Muir went down. Appulise was the only eye witness of the incident. He testifies: "*Q.* So that as I understand it, the wheel itself must have been tight because it was necessary for you to press down on that? *A.* That's right. *Q.* And it was after you had taken your foot off that you saw Mr. Muir fall? *A.* Yes. As soon as he took the hook off I saw him fall so quick I didn't know what happened." Appulise testified that the spin was slow; nevertheless he said that there was a spin and it stands to reason that inasmuch as the rope, already at tension, was stretched still further in the process of releasing the pawl, there was a rebound when the pressure was suddenly taken off. The wheel would need to rotate backwards in order to pay out the line and thus permit the hawser hook to be detached from the boat. The spokes of the wheel projected through the rim to form hand grasps and were capable of giving a blow to an object with which they came in contact. Photographs, placed in evidence by the employer, show the ratchet in such position that one would need to be close to the wheel to reach it and further indicate that the top of the wheel, that is, the top of the most upright spoke handle, to be about level with the eyes of a man of average height. Muir was on the land side of the wheel and Appulise on the water side facing Muir. The wheel was between them. The back spin of the wheel was toward Muir. When Muir fell, it was not with a simple slump or crumpling of the body; he lay supine, his body straight, his head away from the wheel and his feet, the nearest portion of the body to the wheel, about six or seven feet therefrom. The position was better explained by the hypothesis of applied external force than by that of mere failure of muscular support.

Not only is there evidence to support the foregoing factual statement; the evidence of the events themselves preponderates that way and for the most part is without contradiction. There is, of course, sharp divergence between the contentions of counsel, as there was between the determinations

of the two tribunals that have considered the case, regarding the interpretation of the evidence. The action was fast, but we consider that the sequence of events and the whole background of environment combine to show a causative accident. Our finding is that Muir was hit by the wheel and knocked down, that the incident was an accident arising out of and in the course of the employment and that the injuries caused thereby resulted in death.

There was proof that after some delay Muir was taken in an automobile to his sister's home, that thereupon an ambulance was summoned and he was taken to the hospital where he later died, and that while he was in the ambulance *en route* to the hospital he carried on a conversation in the course of which he said that he "got hit with a wheel and got knocked down;" and there was further proof that the certificate of death, signed by the county physician, recited that the death was "due to accident—thrown backwards falling on back of head" and also "while making ferry boat fast at slip in Edgewater was struck by wheel and thrown backwards." If those proofs were relevant and admissible, they serve to confirm our findings *supra*. But we have considered that the statement in the ambulance was not *res gestœ*. It has the aspects of a narrative of a past event. *Anastasio* v. *Rast,* 128 *N. J. L.* 426. Such testimony is always to be received with caution; and we are not satisfied that the circumstance is made to appear as an undesigned incident emanating from the act. *State* v. *Stephan,* 118 *Id.* 592. The county physician appears not to have had such knowledge on the subject or to have obtained his information in such manner (*Aitken* v. *John Hancock Mutual Life Insurance Co.,* 124 *Id.* 58) as would make his certificate evidential on the present issue. Moreover, the certificate, an exhibit below, is not printed in the state of case. We have reached our conclusion without reliance upon either of those items.

The judgment of the Bergen Common Pleas will be reversed, and the record remitted to the end that so much of the amended judgment in the Bureau as constitutes the award be affirmed, with costs.